UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

EVAN MORRIS JOHNSON, by and through
his parent and natural and legal guardian,
DEBBIE JOHNSON,

   Plaintiff,

vs.

CARNIVAL CORPORATION,
a foreign corporation,

   Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

  Plaintiff, EVAN MORRIS JOHNSON, by and through his parent and natural guardian, DEBBIE JOHNSON, by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby files his Complaint against Defendant, CARNIVAL CORPORATION, a foreign corporation, and as grounds therefore states as follows:

## GENERAL ALLEGATIONS

  1. That is an action for negligence arising out of an injury occurring on the cruise ship M/V CARNIVAL VICTORY which was owned and operated by Defendant CARNIVAL CORPORATION (hereinafter "CARNIVAL").

  2. This Court has original jurisdiction over this matter as set forth in 28 U.S.C. Section 1333 as this lawsuit arises out of a maritime and admiralty claim and is controlled by the general

maritime law of the United States. Further, Plaintiff is seeking damages in excess of seventy five thousand dollars ($75,000.00), exclusive of interest, costs and attorney's fees. This Court therefore has jurisdiction based on diversity of citizenship 28 USC § 1332.

3. Venue in this Court is proper pursuant to the passenger ticket contract issued by Defendant CARNIVAL containing a forum selection clause which requires all disputes and matters arising out of and in connection with the subject cruise be litigated in the United States District Court for the Southern District of Florida, Miami Division.

4. This Court has personal jurisdiction over CARNIVAL because Defendant has, at all times relevant to this cause of action, through its agents, officers, distributors, and/or representatives:

    a. Operated, conducted, engaged in, and/or carried on a business venture in Florida and has an office in Florida;

    b. Used, possessed, or held a mortgage or other lien on real property within Florida; and/or

    c. Engaged in substantial and not isolated activities within Florida by maintaining stores, offices, employees, distributors, and/or registered agents in Florida, selling products in Florida, advertising products in Florida, or entering into contracts in Florida.

    d. Additionally, pursuant to its travel document and passenger ticket contract, Defendant has submitted itself to the jurisdiction of this Court.

5. All times material hereto the Defendant, CARNIVAL, was and is a foreign corporation, with its principal place of business in Miami-Dade County, Florida, and was and is a business entity and common carrier engaged in the shipping and passenger cruise business.

6. At all times hereinafter mentioned, Plaintiff, EVAN MORRIS JOHNSON, was a citizen of the United States and was and is a resident of Johnston County, State of North Carolina, and was and is *sui juris*. DEBBIE JOHNSON is Plaintiff's parent and natural and legal guardian and represents Plaintiff herein.

7. At all times material hereto, Defendant owned, operated, managed and/or controlled the M/V CARNIVAL VICTORY.

8. At all material times hereto, Plaintiff was a fare paying passenger and business invitee aboard the M/V CARNIVAL VICTORY for the purpose of enjoying a vacation cruise.

9. At all material times hereto, Defendant owed a duty to Plaintiff of using reasonable care in maintaining the premises of the M/V CARNIVAL VICTORY in a reasonably safe condition and operating the vessel in a reasonably safe manner.

10. Alternatively, Defendant CARNIVAL and/or its employees, at all material times, engaged in certain affirmative undertakings, as hereinafter alleged; and in doing so acquired a duty to exercise reasonable care in those undertakings.

11. The pedestrian stairways aboard the subject vessel, at all relevant times, included an indoor grand stairway forward, which was a route between the ship's Serenity adult area on Deck 12 and the decks below ("the subject stairway").

12. The subject stairway, upon information and belief and at all relevant times, is both a designated pedestrian pathway for accessibility purposes and a designated escape route for purposes of the Safety of Life at Sea (SOLAS) Treaty.

13. Each tread of the subject stairway has a metal nosing which extends over the leading edge of each tread.

14. The subject stairway, at all relevant times, has wooden handrails on both sides, partly to mitigate falls which might occur on the stairway.

15. On or about February 28, 2016 Plaintiff, EVAN MORRIS JOHNSON, was lawfully and properly a fare-paying passenger and business invitee on board the vessel CARNIVAL VICTORY.

16. On said date, Plaintiff, EVAN MORRIS JOHNSON, was walking in a normal manner in the M/V CARNIVAL VICTORY'S interior passenger walkway. As he began to descend the subject stairway, he tripped and fell down the staircase. Plaintiff suffered severe injuries, requiring emergency medical treatment.

17. The accident occurred due to the unsafe design and condition of the interior passenger walkway, and the negligent failure to properly maintain the area, and Defendant's negligent failure to correct the dangerous condition and/or warn Plaintiff of the aforementioned conditions as set forth more fully below.

18. Falls, upon information and belief and at all relevant times, are the leading cause of injuries in the U.S. and aboard Defendant's vessels, and falls on stairs are a leading cause, if not the leading cause, of fall injuries overall. The Defendant, at all relevant times, knew or should have known of these statistics.

19. Research, at all relevant times, has demonstrated that steep stairs, caused by rises that are too high and/or by runs that are not long enough, contribute to an increased risk of missteps, falls, and injuries.

20. Any variation in rise height or run depth will significantly increase the chance that a person descending the stairway will place the ball of the foot on or beyond the nosing of the tread

so that when weight is transferred to that foot it will pivot or slide over the edge, thereby resulting in a fall.

21. Other research has shown that handrails which are too large to allow a power grip will not mitigate a fall in progress. Smaller handrails can.

22. Stairway falls are far less likely to occur on stairways which are not too steep, and/or which have uniform geometry, and/or which have slip-resistant runs which exceed 11 inches, and/or which provide smaller diameter, graspable handrails.

23. Recognition of these risk factors, and their fixes, by prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) has led to the formulation and promulgation of stair and stairway safety standards and guidelines which apply to the marine environment. See, e.g., IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea (SOLAS) Treaty.

24. The general stairway risk factors in question, and the fixes necessary to mitigate them, have been well known for years and have been well-publicized.

25. The aforementioned risks, standards, guidelines, and measures necessary to mitigate them, were knowable, and known, to the Defendant prior to the incident described in the present complaint.

26. The Defendant, in recognition of some of these risks, and at all relevant times, requires its crew members to wear special footwear aboard the vessels; but the Defendant does not warn its passengers to do so.

27. The Defendant knew or should have known that the risk of falls to its passengers aboard its cruise ships, at all relevant times, is heightened because of general lack of passenger familiarity with vessel appurtenances, and because the Defendant, at all relevant times, actively markets its cruises to elderly persons (many of whom are gait-impaired), and sells copious amounts of alcohol aboard the vessels.

28. In the present case, the subject stairway on the M/V CARNIVAL VICTORY at all relevant times, exhibited all of the previously mentioned stairway fall risk factors, and more, as follows:

   a. The subject stairway is too steep;

   b. The risers and runs of the subject stairway are not uniform;

   c. The runs of the subject stairway are not deep enough;

   d. The metal nosings of the treads were loose, creating a tripping hazard;

   e. The handrails of the subject stairway are too big around to permit a power grip;

   f. The lighting in the hallway and above the subject stairway was inadequate; and

   g. The Defendant posted no warning signs or crew to alert passengers to these hazards.

29. Plaintiff was brought to the ship's infirmary, where he was treated by the ship's medical personnel and the ship's physician. The shipboard medical personnel and ship's physician were (1) wearing CARNIVAL uniforms, (2) utilizing forms containing the CARNIVAL logo, and (3) working within medical quarters labeled as CARNIVAL's infirmary.

30. Upon information and belief, CARNIVAL provided living quarters and medical offices on board the ship to the medical staff.

31. Upon examination by the CARNIVAL medical staff, it was discovered that Plaintiff had suffered a severe head injury. The medical staff negligently failed to properly treat Plaintiff's head injury, and negligently failed to promptly and properly evacuate him after undertaking the duty to do so, as more fully set forth below in Count II.

32. The Plaintiff has timely notified the Defendant of his claim in writing within six (6) months of the subject incident; and he has timely filed this lawsuit in this Court within one (1) year of the subject incident, as required by CARNIVAL in the cruise ticket it issued the Plaintiff.

33. All pre-conditions to this action have been met or waived.

## COUNT I - NEGLIGENCE

34. Plaintiff repeats and realleges paragraphs 1 through 33 as if set forth herein *in extenso* and further alleges:

35. On or about February 28, 2016, and continuing thereafter, Defendant breached the duty owed to Plaintiff by committing one or more of the following acts and/or was negligent in the operation, maintenance or control of the M/V CARNIVAL VICTORY in the following respects:

   a. The Defendant failed to exercise reasonable care for the safety of its passengers, including Plaintiff, by creating a dangerous condition in and around the interior stairway;

   b. The Defendant failed to provide a reasonably safe stairway for passengers, reasonably designed for the safety of its passengers;

c. The Defendant failed to properly maintain the interior stairway for use by passengers, including Plaintiff;

d. The Defendant failed to properly inspect the interior stairway prior to the incident in question;

e. The Defendant failed to properly test, clean, and/or repair the interior stairway prior to the incident in question;

f. The Defendant failed to warn passengers, including Plaintiff, whom Defendant knew or should have known would be using the interior stairway of the dangerous condition which existed when passengers used those areas of the ship;

g. The Defendant failed to use appropriate materials in and about the interior stairway;

h. The Defendant allowed a dangerous condition to exist notwithstanding prior incidents involving similar accidents aboard the M/V CARNIVAL VICTORY and other vessels in its fleet of cruise ships;

i. The Defendant failed to adequately investigate prior and subsequent incidents involving similar circumstances on the M/V CARNIVAL VICTORY and other vessels in its fleet of cruise ships;

j. The Defendant failed to post adequate warnings to passengers of the dangerous and unsafe condition in and about the interior stairway of the M/V CARNIVAL VICTORY and other vessels in its fleet of cruise ships

k. The Defendant failed to provide adequate lighting above the subject stairway;

l. The Defendant failed to appropriately mark the first step of the staircase in the interior stairway;

    m. The Defendant failed to provide an appropriately designed handrail;

    n. The Defendant failed to promptly and timely disembark Plaintiff to a suitable medical facility to treat his brain injury after having undertaken the duty to do so;

    o. The Defendant committed the acts of negligence and/or allowed and/or caused the negligent conditions to exist as set forth in paragraph 28(a) through (g) set forth above; and

    p. Other acts of fault and negligence which will be proven at the trial of this matter.

36. Said unreasonably dangerous conditions existed for a sufficient amount of time that Defendant knew or should have known of said dangerous conditions and should have taken steps to correct the unsafe conditions in a timely manner. Defendant was on actual or constructive notice of the presence of said conditions.

37. Defendant was also on constructive notice of the unsafe condition in that it negligently selected an unsafe design for the area in question, including a design with improper stair nosings, improper risers and runs on the subject stairway, improper handrails, and inadequate lighting, thereby causing a tripping hazard in a stairway where passengers and business invitees were expected to walk. Said negligent selection and design make Defendant liable for actually creating the unreasonably dangerous condition which caused Plaintiff's injuries.

38. Further, Defendant negligently selected an unsafe and dangerous design in failing to place proper safety warnings indicating the presence of a staircase in its interior stairway. Defendant knew or in the exercise of due care should have known that the staircase in its interior stairway would cause a tripping hazard, foreseeably injuring business invitees who were expected

to walk in the subject area. Said negligent selection and design of the area in question makes Defendant liable for actually creating the dangerous condition which caused Plaintiff's injuries.

39. CARNIVAL, at all material times, also had a non-delegable duty as a ship operator to comply with the International Safety Management (ISM) Code, which requires vessel operators to establish safeguards against identified risks aboard vessels, such as tripping and slipping hazards, including an unreasonably dangerous interior stairway that does not indicate the presence of a staircase to prevent serious injury to invitees.

40. The aforesaid hazards, risks, and conditions, upon information and belief and at all material times, violated the aforementioned codes, standards, guidelines, and recommendations of the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, the American Society for Testing and Materials (ASTM), National Fire Protection Association (NFPA), and the SOLAS Treaty.

41. Defendant CARNIVAL, at all relevant times, knew or should have known of the aforementioned risks, hazards, and dangerous conditions in the subject stairway, based upon the actual knowledge and activities of its employees, based upon general scientific, engineering, and architectural knowledge then-available to the Defendant, based upon knowledge of its own passengers' prior mishaps at same or similar locations aboard the subject vessel and/or elsewhere in Defendant's fleet of vessels, and based upon the Defendant's actual knowledge of the overall configuration and condition of the subject stairway at all relevant times. Defendant failed to take reasonable steps to correct the hazards and failed to warn Plaintiff of the hazards.

42. Defendant knew or in the exercise of reasonable care should have known that its passengers and business invitees, including the Plaintiff, would encounter the unsafe subject

stairway in the normal course of their usage of the vessel's facilities. Defendant therefore had a duty to warn of any dangerous conditions said invitees would encounter during said normal usage. *Samuelov v. CARNIVAL Cruise Lines, Inc.,* 870 So.2d 853, 856 (Fla.App. 3 Dist. 2003) (property owner has duty to warn of dangerous conditions which the owner has reason to believe that its business invitees will encounter regardless of the open and obvious nature of the condition).

43. The Defendant, before and after the incident complained of in the present case, has been a frequent target of legal claims arising from just such stairway risk factors, and failures to remediate them.

44. The Defendant, at all relevant times, negligently failed to research, and/or to inspect for, and/or to assess and/or to take reasonable and feasible steps to correct, and/or to mitigate, and/or to warn the plaintiff concerning the aforementioned hazards, risks, dangerous conditions, or to undertake repairs that were feasible, in the subject stairway and in substantially similar stairways throughout its fleet.

45. Upon information and belief (and based on the unreasonably dangerous condition of the subject stairway), Plaintiff states that prior to the incident involving the Plaintiff, several passengers had tripped and fallen, or experienced "near misses", on the same or similar stairway, or on similar stairways throughout CARNIVAL'S entire fleet of vessels, and Defendant and/or its crew members, and/or its personnel were well aware of this historical information.

46. CARNIVAL, at all material times, breached its aforementioned non-delegable duties by failing to inspect or maintain the subject stairway, and/or by selecting a stairway that was unreasonably dangerous, which constituted an unreasonable risk of harm to its passengers, including the Plaintiff.

47. Defendant's negligence, as described above, caused the injuries Plaintiff complains of in this lawsuit.

48. As a result of the Defendant's negligence, the Plaintiff was injured in and about his body and extremities, suffered physical, emotional and mental pain, disfigurement, mental anguish, significant and permanent scarring, loss of the capacity of the enjoyment of life, incurred expenses of hospitalization, medical and nursing care and treatment, enhanced medical insurance costs, loss of earnings, loss of the ability to earn money, and/or aggravation of a previously existing condition. The injuries are either permanent or continuing in nature and the Plaintiff will suffer further losses and impairments in the future.

49. Defendant is at fault for causing Plaintiff's injuries and is liable to him for the above described damages which are continuing and/or permanent in nature.

50. Plaintiff lost the value of the cruise, as well as attendant travel and airfare expenses and related costs.

51. Plaintiff demands trial by jury.

WHEREFORE, Plaintiff, EVAN MORRIS JOHNSON, alleges negligence of Defendant, CARNIVAL CORPORATION, a foreign corporation, and prays that judgment be entered in Plaintiff's favor and against Defendant, for damages, costs, interest, pre-judgment interest and for all such other relief to which Plaintiff may be entitled by virtue of these proceedings, including trial by jury.

**COUNT II**
**VICARIOUS LIABILITY OF CARNIVAL FOR THE NEGLIGENCE OF THE SHIPBOARD MEDICAL PERSONNEL BASED UPON APPARENT AGENCY**

52. Plaintiff repeats and realleges paragraphs 1 through 33 as if set forth herein *in extenso* and further alleges:

53. Plaintiff, EVAN MORRIS JOHNSON, was treated by a shipboard physician and additional medical personnel who were agents with the authority to act on behalf of, and for the benefit of, CARNIVAL.

54. CARNIVAL held this physician and additional medical personnel out as agents of CARNIVAL through the use of crewmember uniforms, the use of CARNIVAL forms, and the fact that CARNIVAL provided living quarters and medical offices on board the ship to the medical staff.

55. Defendant, CARNIVAL, promotes the idea that the medical staff who work in its "medical centers" are employed by the cruise line as part of a marketing tool to induce passengers such as the Plaintiff to buy cruises on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care.

56. That CARNIVAL manifested to the Plaintiff in this case that its medical staff, including the shipboard physician, were acting as its employees and/or actual agents in various ways, including but not limited to the following:

   a. The doctor and nurse both worked as what the Defendant describes in its advertising as its "medical centers";

   b. That the "medical centers" are owned and operated by CARNIVAL, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

    c. That the passenger is billed directly by CARNIVAL through the passengers "Sign and Sail" Card, whereas the "medical staff", including the shipboard physician, are paid salaries by CARNIVAL to work in the "medical centers";

    d. That the medical staff in this case, including the shipboard physician, were given uniforms to wear which include name tags, and which have the CARNIVAL name and logo. Said uniforms were required by CARNIVAL to be worn by the doctor and medical staff;

    e. That the doctor is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers;

    f. That both the ship's doctor and nurse were held out to the passengers by CARNIVAL as being members of the ship's crew;

    g. That the Defendant put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship;

    h. That the cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew and they appear on the ship's manifest as crewmembers;

    i. That the ship's doctor and medical staff are permitted to eat with the ship's crew;

    j. That the ship's physician and medical staff provide services in the ship's "medical centers" and the Plaintiff was required to be seen at the ship's medical center;

57. The above factors led the Plaintiff's family to believe that the shipboard physician and the additional medical personnel were authorized to act for the benefit of CARNIVAL.

58. Moreover, it was reasonable for Plaintiff's family to believe that the physician and additional medical personnel were agents of CARNIVAL, as they (1) were wearing CARNIVAL uniforms, (2) utilized medical forms bearing the CARNIVAL logo, and (3) upon information and belief, were provided living quarters and medical offices on the ship and were under the command of the ship's superior officers.

59. Had the Plaintiff's family known that the physician and additional medical personnel were independent contractors and not employees of CARNIVAL, Plaintiff's family would not have authorized the medical assistance for Plaintiff, but would have undertaken efforts to find him more appropriate medical care.

60. Based upon the belief that the physician and additional medical personnel were agents of CARNIVAL, Plaintiff's family acted upon this belief in seeking out this personnel for medical care, and his family acted further upon this belief by authorizing the care and treatment of Plaintiff by these individuals, relying upon their apparent education, skill and training, in authorizing treatment of Plaintiff by the ship's physician and additional medical personnel.

61. Plaintiff's family relied on CARNIVAL's representations to Plaintiff's detriment.

62. The ship's physician and additional medical personnel negligently failed to properly treat Plaintiff, causing further and additional injury as follows:

    a. Failed to assess and stabilize Plaintiff's airway and circulation;

    b. Failed to prevent secondary injury by failing to maintain Plaintiff's mean arterial pressures above 90 mm Hg and arterial saturations above 90%;

    c. Failed to perform or provide a CT scan;

    d. Failed to reduce intracranial pressure by use of appropriate means, such as intravenous mannitol, hypertonic saline, CSF drainage, hyperventilation and/or high-dose barbiturate therapy;

    e. Failed to improve and/or monitor cerebral perfusion pressure;

    f. Failed to apply hypothermic therapy to decrease intracranial pressure;

    g. Failed to provide nutritional intervention via enteral feeding;

    h. Failed to provide pharmacologic prophylaxis to reduce deep vein thrombosis;

    i. Failed to administer a calcium channel blocker, such as nimodipine, to reduce the chance of disability;

    j. Failed to promptly and timely disembark Plaintiff to a suitable medical facility to treat his brain injury;

63. Furthermore, CARNIVAL's medical staff advised Plaintiff's family that CARNIVAL would arrange for Plaintiff's medical evacuation. CARNIVAL therefore undertook the duty to promptly and properly disembark Plaintiff to a medical facility. CARNIVAL, through its medical staff and directly, negligently failed to timely and promptly disembark Plaintiff.

64. Defendant's negligence, as described above, caused and/or aggravated the injuries Plaintiff complains of in this lawsuit.

65. CARNIVAL is vicariously liable for the negligent acts of the shipboard medical staff, including the shipboard physician.

66. As a result of the Defendant's negligence, the Plaintiff was injured in and about his body and extremities, suffered physical, emotional and mental pain, disfigurement, mental anguish, significant and permanent scarring, loss of the capacity of the enjoyment of life, incurred

expenses of hospitalization, medical and nursing care and treatment, enhanced medical insurance costs, loss of earnings, loss of the ability to earn money, and/or aggravation of a previously existing condition. The injuries are either permanent or continuing in nature and the Plaintiff will suffer further losses and impairments in the future.

67. Defendant is at fault for causing Plaintiff's injuries and is liable to him for the above described damages which are continuing and/or permanent in nature.

68. Plaintiff lost the value of the cruise, as well as attendant travel and airfare expenses and related costs.

69. Plaintiff demands trial by jury.

WHEREFORE, Plaintiff, EVAN MORRIS JOHNSON, alleges negligence of Defendant, CARNIVAL CORPORATION, a foreign corporation, and prays that judgment be entered in Plaintiff's favor and against Defendant, for damages, costs, interest, pre-judgment interest and for all such other relief to which Plaintiff may be entitled by virtue of these proceedings, including trial by jury.

Dated this __20th__ day of July, 2016.

Respectfully submitted,

BILLERA LAW
2201 N.W. Corporate Blvd., Suite 201
Boca Raton, FL 33431
Telephone: 561-218-4639
Fax: 561-826-7847
By: __s/John Billera_____
JOHN F. BILLERA, ESQ.
Florida Bar No.: 869041

        THE MADALON LAW FIRM
100 North Federal Hwy.,
Suite CU-5, 4th Floor
Fort Lauderdale, FL  33301
JOSEPH MADALON, ESQ.
Telephone: (954) 923-0072
Facsimile: (954) 923-0074
Attorneys for Plaintiff
pleadings@madalonlaw.com